# JS-6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

|  |  |
|---|---|
| *IN RE*: **PFIZER** | ) Case No.: SAMC 17-00005-CJC(JPRx)<br>) Case No.: *SEE* ATTACHED LIST<br>)<br>)<br>)<br>) ORDER GRANTING PLAINTIFFS'<br>) MOTION TO REMAND<br>)<br>)<br>) |

## I. INTRODUCTION

This proceeding involves over 100 cases that were previously filed in California state court by thousands of women alleging that use of the drug Lipitor caused them to suffer from Type II diabetes. The cases were removed to federal court based on "mass action" jurisdiction pursuant to the Class Action Fairness Act ("CAFA") and then consolidated under a master case number for administrative purposes. (*See* Attached List.) Before the Court is Plaintiffs' consolidated motion to remand the cases back to state court on the ground that 100 or more plaintiffs have not proposed that their cases be

tried jointly as is required for mass action jurisdiction.  (Dkt. 8 [Motion, hereinafter "Mot."].)  After considering the evidence and the arguments presented by the parties, the Court GRANTS Plaintiffs' motion to remand.  Although many plaintiffs have proposed a joint trial, 100 plaintiffs have not done so.

## II.  BACKGROUND

In their original complaints filed in California state court, Plaintiffs alleged that Lipitor, a prescription drug developed and manufactured by Pfizer, Inc., and marketed and distributed by McKesson Corporation, caused them to suffer from Type II diabetes. (*Id.* at 3.)  On August 16, 2013, three such plaintiffs filed a petition with the California Judicial Council to have their individual cases coordinated in a Joint Council Coordinated Proceeding ("JCCP") pursuant to California Code of Civil Procedure Section 404.  (Dkt. 9 [Declaration of Charles G. Orr, hereinafter "Orr Decl."] ¶ 2; *id.* Ex. A.)  After additional plaintiffs filed similar state court actions, a group of twenty-one plaintiffs from eight state court cases, including the three from the original petition, filed an amended coordination petition on September 25, 2013.  (*Id.* ¶ 3; *id.* Ex. B Pt. 1 at 2–10 [hereinafter "Am. Pet."].)  The amended petition stated that it was "based upon the criteria codified in California Code of Civil Procedure § 404.1.  That is, in the LIPITOR® cases sought to be coordinated herein:

> *One judge hearing all of the actions for all purposes* in a selected site or sites will promote the ends of justice taking into account whether common questions of fact or law are predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of the courts; *the disadvantages of duplicative and inconsistent rulings, orders, or judgments*; and, the likelihood of settlement of the actions without further litigation should coordination be denied."

(Am. Pet. at 6–7 (quoting almost verbatim the requirements of Cal. Civ. Proc. Code § 404.1) (emphasis added).)  The amended petition specified that coordination would "promote the ends of justice because there are common issues of fact and law, namely the adequacy of the . . . LIPITOR® warning labels, and coordination will avoid duplicative and inconsistent rulings, orders, and judgments." (*Id.* at 8.)  It also stated that counsel for those twenty-one plaintiffs named in the amended petition "is informed and believes that additional LIPITOR® injury cases will be filed within the next weeks.  Petitioners will seek to join these additional cases via Add-On Petitions." (*Id.* at 7.)

The memorandum of points and authorities supporting the amended petition further explained that the cases will "involve duplicative requests for the same defendant witness depositions and the same documents related to the development, manufacturing, testing, marketing and sale of LIPITOR®.  Absent coordination of these actions by a single judge, there is a significant likelihood of duplicative discovery, waste of judicial resources and possible inconsistent judicial rulings on legal issues." (Orr Decl. Ex. B Pt. 1 at 11–19 [hereinafter "MPA"] at 3; *see also id.* at 7 ("[T]here will be duplicative discovery obligations upon the common defendants unless coordination is ordered.  Coordination before initiation of discovery in any of these cases will eliminate waste of resources and will facilitate economy.").)  It reiterated the concern of preserving judicial resources and avoiding "duplicative and inconsistent rulings, orders, or judgments." (*Id.* at 7–8.)  It further represented that "issues likely to be raised in this action include issues pertaining to liability, allocation of fault and contribution, as well as the same wrongful conduct of defendants.  Such difficult issues may ultimately be addressed by the California Court of Appeal.  Coordination is required in order to avoid duplicative efforts and inconsistent rulings." (*Id.* at 8.)  The amended petition was also accompanied by an attorney declaration which stated that "[w]ithout coordination, two or more separate courts will decide essentially the same issues and may render different rulings on liability and other issues." (Orr Decl. Ex. B. Pt. 1 at 27–32 [hereinafter "Finson Decl."] ¶ 11.)

On December 6, 2013, the Judicial Council granted the request for coordination and created a JCCP with the special title of "Lipitor Cases," but only included the three cases from the original petition in the JCCP. (*Id.* ¶ 4; *id.* Ex. C.) The JCCP was assigned to Judge Kenneth R. Freeman of Los Angeles Superior Court. (*Id.* ¶ 5; *id.* Ex. D.) On January 13, 2014, Judge Freeman entered an order granting an add-on petition whereby four plaintiffs in another state court action sought to be added to the JCCP, bringing the total number of plaintiffs in the JCCP to seven. (Orr Decl. ¶ 6; *id.* Ex. E.)

The next day, Pfizer exercised an automatic peremptory challenge to Judge Freeman's assignment as coordination judge for the JCCP, (*id.* ¶ 7; *id.* Ex. F), so the JCCP was reassigned to Judge Jane Johnson, (*id.* ¶ 8; *id.* Ex. G). Judge Johnson entered orders granting add-on petitions filed by two plaintiffs who had been named in the amended coordination petition but not included in the initial order creating the JCCP, bringing the total number of plaintiffs in the JCCP to nine. (*Id.* ¶¶ 9–10; *id.* Exs. H, I.) Fifty-three more plaintiffs sought to be added to the JCCP through add-on petitions, including fifteen more plaintiffs who had been named in the amended coordination petition but not included in the initial order creating the JCCP. (*Id.* ¶¶ 11–13; *id.* Exs. J, K, L.) These petitions are still pending. Thus, to date only sixty-five plaintiffs have sought to be coordinated in the JCCP—nine were actually coordinated, fifty-three still have pending petitions, and three more were named in the amended coordination petition but have not filed add-on petitions to be coordinated after they were left out of the initial order creating the JCCP.

On February 24, 2014, the parties had their first and only status conference in state court before Pfizer started removing the cases to federal court. (Orr Decl. Ex. M.) At the conference, counsel for the JCCP plaintiffs (hereinafter "JCCP Counsel") provided Judge Johnson with a chart demonstrating that at that point in time, there were at least fifty-four cases concerning similar effects of Lipitor filed in California, which encompassed 1,855

plaintiffs.  (*Id.* at 5:20–6:4; 6:16–17.)  JCCP Counsel explained that they have "had total transparency with respect to communications of lawyers both in California and nationally who had any interest in or doing anything [sic] litigation involving Lipitor," (*id.* at 7:2–5), and presented Judge Johnson with a proposed "leadership structure" comprising of an executive committee and a steering committee to handle the rapidly-expanding litigation, (*id.* at 7:15–18).  JCCP Counsel had also "given every lawyer who's interested at all in participating in the organizational structure and leadership, the opportunity to contact [them] and . . . enter their willingness or interest in being part of the leadership structure," and had not turned down a single lawyer who expressed such interest.  (*Id.* at 11:7–17.)  They further represented that they "know lawyers that are filing the cases," "know who is interested in participating in leadership and who's not," and hoped "to get the cases that have been filed obviously added on [to the JCCP] as soon as possible."  (*Id.* at 11:19–21, 15:22–23.)  Counsel for both parties then sought clarification regarding the details of coordination, and the following exchange took place:

> MR. KIESEL: And that's for discovery purposes; that they are coordinated together for discovery.
>
> THE COURT: Right.
>
> MR. CHEFFO: Well, would they be sent back?
>
> THE COURT: They can be sent back.  They can be sent back for trial. Yes, they can be sent back.
>
> MR. CHEFFO: So the coordination order is with respect to discovery?
>
> THE COURT: Everything is sort of bundled here for case management and discovery.  And they can be tried here, but they can be sent back for trial.

(*Id.* at 17:13–23.)

On March 4, 2014, Judge Johnson signed a proposed order to streamline the procedures for adding new cases to the JCCP through additional add-on petitions. (Dkt. 13-1 [Declaration of Marshall Searcy, hereinafter "Searcy Decl."] at Ex. C.) The order regarding add-on procedures stated that "[a]ll cases filed in California state court against Pfizer, Inc. or McKesson Corporation, alleging injuries related to the development of Type II diabetes, and seeking damages, injunctive relief, or restitution arising from the investigation of Lipitor®, are assigned to the Honorable Jane L. Johnson," and the "parties to such actions, however, are still required to comply with the stipulation or notice add-on procedures set forth in this Order." (*Id.* at 1.) The order further explained that after the parties filed either stipulated or noticed add-on petitions, any party named in such a petition would have ten days from the date of service to file a notice of opposition to the coordination. (*Id.* at 3.) If no notice of opposition was filed, the cases identified in such add-on petitions would be automatically added to the JCCP. (*Id.* at 3–4.)

Beginning on March 12, 2014, Pfizer began removing the state court actions, including cases that had not been named in the amended coordination petition or add-on petitions, to federal court on the grounds of diversity jurisdiction (fraudulent joinder) and mass action jurisdiction pursuant to CAFA. (Orr Decl. ¶ 15; Dkt. 13 [Opposition, hereinafter "Opp."] at 9–10.) Pfizer also requested a stay in federal district court pending transfer of the cases to Multi-District Litigation ("MDL") court in South Carolina. (*Id.* ¶ 16.) "While some removed plaintiffs acquiesced in the transfer of their cases to the MDL and chose at that time not to seek remand to California state court, many removed plaintiffs immediately advised the MDL court that they would be seeking remand to California and asked the MDL court to stay their actions pending determination of the threshold question of federal subject matter jurisdiction." (*Id.*) The MDL court did so, (*id.* Ex. N), and then in June 2014 determined that diversity jurisdiction did not exist, *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 2:14-CV-01810, 2016 WL 7335738, at *6 (D.S.C. Nov. 7, 2016). Because the only remaining

basis for federal subject matter jurisdiction was CAFA's mass action provision, and because a majority of plaintiffs did not consent to transfer to MDL, the MDL court recommended that the Judicial Panel on Multidistrict Litigation remand the cases. (*Id*. at *7–*8.) The cases were then transferred back to this Court. By the last count, Plaintiffs have filed more than 140 California state court actions involving 4,800 plaintiffs, which have been removed to federal courts in all four districts of California. (*Id*. at 10.) Plaintiffs now ask this Court to remand the cases to state court on the grounds that the mass action removal requirements of CAFA are not met. (*See generally* Mot.)

## III. DISCUSSION

CAFA provides federal district courts with original jurisdiction over "mass actions," which are defined as "any civil action . . . in which monetary relief claims of *100 or more persons are proposed to be tried jointly* on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d) (emphasis added). Plaintiffs in a mass action, unlike in a class action, do not seek to represent the interests of parties not before the court. *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 953 (9th Cir. 2009). However, a mass action "shall be deemed to be a class action" removable to federal court, as long as the rest of CAFA's jurisdictional requirements, including an aggregate amount in controversy above $5 million and minimal diversity, are met. *Id.* "Although CAFA[]extends federal diversity jurisdiction to both class actions and certain mass actions, the latter provision is fairly narrow. As noted above, CAFA's 'mass action' provision applies only to civil actions in which the 'monetary relief claims of 100 or more persons are proposed to be tried jointly.'" *Id.*

//
//
//

## A.  A Proposal for a Joint Trial Was Made

Plaintiffs' motion explains that "at the time the amended coordination petition was filed, the attorneys who drafted the petition believed they were proposing coordination for pretrial proceedings only."[1]  (Dkt. 15 [hereinafter "Reply"] at 3n.1.)  However, Plaintiffs do not seriously challenge Pfizer's position that the amended coordination petition proposed a joint trial, (*see generally id*.; Mot.).  Nor could they.

As "masters of their complaints," plaintiffs are permitted to structure actions to avoid federal jurisdiction under CAFA.  *Corber v. Xanodyne Pharm., Inc.*, 771 F.3d 1218, 1223 (9th Cir. 2014).  But they are "also the masters of their petitions for coordination.  Stated another way, when we assess whether there has been a proposal for joint trial, we hold plaintiffs responsible for what they have said and done."  *Id.*  Here, JCCP Counsel requested a joint trial on behalf of the plaintiffs named in the amended coordination petition and add-on petitions.  The amended petition incorporated the language of Section 404.1 and requested coordination *"for all purposes."*  (Am. Pet. at 6–7 (emphasis added).)  It explained that plaintiffs sought to avoid not only duplicative and inconsistent rulings and orders, but also *judgments*.  (*Id.* at 8.)  The accompanying memorandum of points and authorities contained considerable language about coordination for discovery purposes, (MPA at 3, 7), but again reiterated the need to avoid

---

[1] In *Romo v. Teva Pharm. USA, Inc.*, 731 F.3d 918 (9th Cir. 2013), *rehearing en banc granted and decision vacated*, 742 F.3d 909 (Feb. 10, 2014), the Ninth Circuit considered whether, as a matter of first impression, a coordination petition pursuant to California Code of Civil Procedure Section 404 constituted a proposal for a joint trial, and concluded that it did not.  *Id.* at 921–23.  *Romo* was issued the day before Plaintiffs filed their amended petition.  *Romo* analyzed the coordination petitions and supporting memorandum of points and authorities and concluded that although the memorandum encouraged coordination of "all of the actions for all purposes" and sought to avoid "inconsistent judgments" and "conflicting determinations of liability," the "obvious focus" of the petition was on "pretrial proceedings, *i.e.*, discovery matters."  *Id.* at 922–23.  On February 10, 2014, however, the Ninth Circuit granted rehearing *en banc* and vacated the decision.  *Romo v. Teva Pharm. USA, Inc.*, 742 F.3d 909 (9th Cir. 2014).  In *Corber v. Xanodyne Pharm., Inc.*, 771 F.3d 1218 (9th Cir. 2014), described below, the Ninth Circuit reexamined the coordination petitions in *Romo* and concluded that they did propose a joint trial.  *Id.* at 1223.

"duplicative and inconsistent rulings, orders, or *judgments*," (*id.* at 7–8 (emphasis added)). Notably, it explained the need to avoid "duplicative efforts and inconsistent rulings" on "issues pertaining to *liability*, allocation of fault and contribution, as well as the same wrongful conduct of defendants" because they might "ultimately be addressed by the California Court of Appeal." (MPA at 8 (emphasis added).) Finally, the accompanying attorney declaration expressed the desire to avoid inconsistent "rulings on *liability* and other issues." (Finson Decl. ¶ 11 (emphasis added).) The amended petition clearly stressed a need for coordination beyond pre-trial proceedings.

The language of the amended petition and supporting documents is substantially similar to that in *Corber*, in which the Ninth Circuit *en banc* considered whether coordination petitions constituted a proposal for a joint trial. *Corber*, 771 F.3d 1218. *Corber* focused heavily on the text of the petitions and supporting documents and explained that while the petitions did not expressly request a "joint trial," they sought coordination "for all purposes," just as the petition in this case does. *Id.* at 1223. *Corber* reasoned that read literally, "'[a]ll purposes' must include the purposes of trial." *Id.* The Court also noted that the petitions' stated reasons for coordination, namely the danger of inconsistent judgments and conflicting determinations of liability, further supported the conclusion that they sought a joint trial. *Id.* at 1223–24. The *Corber* plaintiffs had not simply recited the factors articulated in Section 404.1, but asserted that "'[t]he inevitability of realizing the inconsistency and duplication factor of California Code of Civil Procedure Section 404.1[ ] weighs heavily in favor of coordination,'" that "'issues pertaining to liability, allocation of fault and contribution, as well as the same wrongful conduct of defendants,' would require coordination," and "repeatedly stated that the factors catalogued in section 404.1 all supported coordination, including the fact that '[o]ne judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice.'" *Id.* at 1224. Here too, the amended petition did not simply recite the Section 404.1 factors, but rather it repeatedly noted the need to avoid

inconsistent judgments and rulings on issues of liability, which could ultimately come before the California Court of Appeal.  (Am. Pet. at 8; MPA at 7–8; Finson Decl. ¶ 11.)

*Corber* clarified that not all petitions for coordination under Section 404 are "*per se* proposals to try cases jointly for the purposes of CAFA's mass action provision." *Corber*, 771 F.3d at 1224.  A coordination petition that "expressly seeks to limit its request for coordination to pre-trial matters" would align with the CAFA carve-out for claims that have been consolidated or coordinated solely for pretrial proceedings.[2]  *Id.* Although JCCP Counsel represented at the February 25, 2014, status conference in state court that their primary concern was coordination for purposes of discovery, the language of the amended coordination petition was not limited to pre-trial matters.  (Orr Decl. Ex. M at 17:13–23.)  It clearly proposed coordination for judgments and proceedings that would involve issues of liability, and the Court must hold the plaintiffs who submitted the amended petition and accompanying add-on petitions responsible for this proposal of a joint trial.  *Corber*, 771 F.3d at 1223.

## B.  100 **or More Plaintiffs Did Not Propose a Joint Trial**

The real dispute among the parties is whether there was a proposal that *100* plaintiffs' cases be tried jointly.  The Ninth Circuit has so far declined to specify exactly who must make a proposal for a joint trial to trigger CAFA's mass action provision, which encompasses cases "in which monetary relief claims of 100 or more persons *are proposed* to be tried jointly." *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1047 (9th Cir. 2015) (emphasis added) (citing 28 U.S.C. § 1332(d)(11)(B)(i)) (declining to decide whether a proposal for a joint trial could come from a judge).  The Ninth Circuit has only

---

[2] *Corber* also noted that "[i]t is not clear whether the California Judicial Council would grant coordination for less than 'all purposes.'  However, if Plaintiffs had qualified their coordination request by saying that it was intended to be solely for pre-trial purposes, then it would be difficult to suggest that Plaintiffs had proposed a joint trial." *Corber*, 771 F.3d at 1224–25.

held that it is insufficient for a proposal for a joint trial to come from a defendant. *Id.* at 1048. However, in *Briggs,* the Ninth Circuit recently clarified that although "implicit proposals may trigger CAFA's removal jurisdiction," a "proposal for purposes of CAFA's mass action jurisdiction, *even an implicit proposal*, is a '*voluntary and affirmative act*' . . . and an '*intentional act*.'" *Id.* at 1048 (emphasis added) (quoting *Corber*, 771 F.3d at 1224 and *Parson v. Johnson & Johnson*, 749 F.3d 879, 888 (10th Cir. 2014)). "It is 'not a mere suggestion'" or "a mere prediction." *Id.* (quoting *Scimone v. Carnival Corp.*, 720 F.3d 876, 883 (11th Cir. 2013)).[3]

Plaintiffs insist that at most only sixty-five plaintiffs proposed that their cases be jointly tried, because that is the maximum number of plaintiffs that ever attempted to join the JCCP. (Mot. at 21.) They maintain that the rest of the plaintiffs did nothing more than file their complaints in state court, and the plaintiffs in the JCCP cannot bind other plaintiffs who have not yet been added through an add-on petition or other means. (*Id.* at 16–19 (citing *Tanoh*, 561 F.3d at 953–54 and *Briggs*, 796 F.3d at 1049).) The Court agrees.

Only the sixty-five plaintiffs who were named in the amended coordination petition or add-on petitions have acted voluntarily and affirmatively to propose a joint trial. While most of these plaintiffs' add-on petitions are still pending, and a few who were included in the amended petition and left out of the initial order creating the JCCP did not subsequently file an add-on petition, these sixty-five plaintiffs each proposed, in some form or another, that their cases be tried jointly. This number, however, falls short of the required 100 plaintiffs in CAFA's mass action provision.

---

[3] *Briggs* also explained that "[w]hile *Corber* held that an initial petition for a JCCP can constitute a proposal, it is not clear whether an add-on petition can constitute a proposal as well—particularly where, as here, the claims in the add-on petition would not meet CAFA's hundred-person threshold unless added to claims that had previously been joined 'upon motion of a defendant.'" *Briggs*, 796 F.3d at 1050. *Briggs* did not reach this issue, however, because "even if the . . . plaintiffs' add-on petition could be construed as a proposal, it was not a proposal for a joint trial." *Id.*

Pfizer argues that JCCP Counsel proposed joining thousands of plaintiffs to the coordinated action by "repeatedly stat[ing] that they would seek to add 'all subsequent LIPITOR actions.'" (Opp. at 2–3, 7.) Contrary to Pfizer's assertion, JCCP Counsel's statements are insufficient to trigger CAFA mass action jurisdiction, because they are merely suggestions or predictions—not voluntary and affirmative acts proposing a joint trial on behalf of the remaining plaintiffs. Although JCCP Counsel provided Judge Johnson with a list of all known Lipitor actions filed in California State Court at the time of the February 25, 2014, status conference, this did not "unambiguously inform[] [Pfizer] to a substantial degree of specificity" that the claims of at least 100 Plaintiffs had been proposed to be tried jointly. (*See* Opp. at 14–15 (citing *Portnoff v. Janssen Pharm., Inc.*, 2017 WL 708745, at *6 (E.D. Pa. Feb. 22, 2017)).) It merely alerted Judge Johnson and Pfizer to additional cases that could *potentially* be coordinated. Pfizer is correct that the statutory question is whether a joint trial has been proposed, not whether it will actually take place. (Opp. at 14.) However, absent add-on petitions or similar affirmative actions or definitive commitments by the remaining plaintiffs or their attorneys, they have not proposed a joint trial.[4]

Pfizer also notes that JCCP Counsel represent at least 2,823 plaintiffs in 77 Lipitor actions, and have stated that they are in close communication with the attorneys working on the rest of the Lipitor cases. (Opp. at 2–3.) Pfizer apparently believes that the fact that JCCP Counsel are working on additional cases that have not yet filed add-on petitions and are cooperating with other plaintiffs' attorneys is enough to impute the joint

---

[4] It is important to note that the legislative history of the mass action provision supports the view that it is the 100 or more plaintiffs themselves who must propose the joint trial. The legislative history provides that "subsection 1332(d)(11) expands federal jurisdiction over mass actions–suits that are brought on behalf of numerous named plaintiffs *who claim* that their suits present common questions of law or fact that should be tried together even though they do not seek class certification status. . . . Under subsection 1332(d)(11), any civil action in which 100 or more *named parties seek to try their claims* for monetary relief together will be treated as a class action for jurisdictional purposes." S. Rep. 109-14, at 46, 2005 U.S.C.C.A.N. 3, at 43–44 (emphasis added).

trial proposal of the sixty-five plaintiffs onto remaining plaintiffs. This is unpersuasive, because it is the identities and actions of the clients, not that of the attorneys, that matters. JCCP Counsel have not acted on *behalf* of any plaintiffs beyond the aforementioned sixty-five —JCCP Counsel have merely represented that they anticipate many additional, unspecified cases will be coordinated. Neither the actions of the sixty-five plaintiffs nor JCCP Counsel can be imputed to the remaining plaintiffs here.

The Court also finds Pfizer's attempts to minimize the effects of *Briggs* unavailing. (*See* Opp. at 18–19.) The Court is aware that in *Briggs*, it was the defendants who had initiated coordination proceedings, and the plaintiffs had only represented to the district judge that their cases would likely be joined for trial in the state court JCCP if they were remanded. *Briggs*, 796 F.3d. at 1049. *Briggs* reasoned that the plaintiffs had not made proposals that could trigger CAFA mass action jurisdiction simply by "filing their cases in the California state court system, when a consolidated proceeding covering similar claims, initiated by defendants, was underway in California court," or by representing to the federal district court "what would or might happen to their cases, if they were remanded to the state court," especially since the district court lacked authority to add cases to the state court JCCP. *Id.* In this case, unlike in *Briggs*, plaintiffs initiated the JCCP and had made representations to the JCCP court regarding their desire to coordinate additional cases. Nevertheless, *Briggs'* holding that a "proposal" is a "voluntary and affirmative" act clearly applies here. And only sixty-five plaintiffs have proposed a joint trial. No other plaintiff has acted voluntarily and affirmatively to be part of or be bound by that proposal.

Pfizer also contends that the remaining plaintiffs took other affirmative steps in their complaints to propose a joint trial. Apparently, more than 100 Lipitor cases involving 3,400 plaintiffs have civil cover sheets attached to their complaints indicating that the cases are "complex" pursuant to California Rules of Court 3.400 because they are

subject to "[c]oordination with related actions pending in one or more courts in other counties, states, or countries, or in federal court;" fifty-nine state court complaints included notices of related cases stating that the case was related to the JCCP before Judge Johnson; twenty-five attached copies of an order entered by Judge Johnson limiting Plaintiffs' complex case fees for "all new add-on cases joined to this coordinated proceeding;" and four identified the JCCP in their case captions. (Opp. at 3, 8–9; 9 n.5.) However, these actions are all administrative in nature and merely alert the clerk's office to the *possibility* of coordination in order to assist with case sorting and management. They do not constitute voluntary and affirmative acts by each plaintiff to be part of and bound by a proposal for a joint trial.[5] *See Briggs*, 796 F.3d. at 1049 (The plaintiffs had not made a proposal for a joint trial by simply "filing their cases in the California state court system, when a consolidated proceeding covering similar claims . . . was underway in California court.").

Nor can the Court assume that at least thirty-five more plaintiffs will be coordinated in this action because of the sheer number of plaintiffs that have filed Lipitor cases. Plaintiffs are free to structure actions to avoid CAFA jurisdiction. *Corber*, 771 F.3d at 1223 ("[P]laintiffs are the 'masters of their complaint' and do not propose a joint trial simply by structuring their complaints so as to avoid the 100-plaintiff threshold."). The plaintiffs who are not yet part of the JCCP could have many legitimate reasons for not wanting a joint federal trial. For example, some plaintiffs might seek to distance themselves from those with seemingly weaker claims or from those who will be preoccupied with defenses unique to them. Other plaintiffs who have suffered more

---

[5] The parties debate whether the coordination petitions in *Corber* explicitly encompassed at least 100 plaintiffs or whether the effects of the coordination petitions were merely imputed onto other plaintiffs. (*See* Opp. at 15–16; Reply at 3–5, 4 n.2.) This fact was not discussed in *Corber* and its implications were not argued or addressed in the opinion. *See generally Corber*, 771 F.3d 1218. *Corber* only analyzed the narrow question of whether the coordination petitions were sufficient to constitute proposals, not whether they could bind plaintiffs that were not explicitly named in the coordination petitions or add-on petitions. *Id.* at 1222.

-14-

severe injuries or consequences, such as stroke, blindness, and amputation, or who are bringing suit on behalf of a deceased family member, may not wish to have their claims tried jointly with patients who have had milder injuries or consequences. The Court will not speculate, nor base its jurisdictional decision, on whether thirty-five or more plaintiffs will likely take voluntary and affirmative action to be part of and bound by a proposal for a joint trial. All that matters for the Court's decision now is that at least thirty-five additional plaintiffs have not yet taken such voluntary and affirmative action.

Finally, Pfizer suggests that Judge Johnson herself has proposed a joint trial of 100 or more plaintiffs because her order regarding add-on procedures states that "[a]ll cases filed in California state court against Pfizer, Inc. or McKesson Corporation, alleging injuries related to the development of Type II diabetes . . . are assigned to the Honorable Jane L. Johnson, Los Angeles Superior Court for purposes of coordination." (Opp. at 14 (citing Searcy Decl. Ex. C at 1).) Pfizer submits that because the Ninth Circuit has left open the possibility that "a state court's *sua sponte* joinder of claims might allow a defendant to remove separately filed actions to federal court as a single 'mass action' under CAFA," Judge Johnson's order should give rise to mass action jurisdiction. (*Id.* at 14 n.7 (citing *Tanoh*, 561 F.3d at 956).) The Court disagrees. The sentence immediately following the one Pfizer cites clarifies that "[t]he parties to such actions, however, *are still required to comply* with the stipulation or notice add-on procedures set forth in this Order." (Searcy Decl. Ex. C at 1 (emphasis added).) By the express terms of Judge Johnson's order, the additional cases will not be part of the JCCP or subject to the terms of the coordination petition unless and until they are added by an add-on petition and not subject to a notice of opposition. Indeed, Judge Johnson has only granted two add-on petitions thus far, bringing the total number of plaintiffs in the JCCP to just nine. (Orr Decl. Exs. H, I.) Moreover, at the status conference, Judge Johnson repeatedly stated that the JCCP cases "can be sent back for trial," so it is far from clear whether Judge

Johnson's order is even proposing a joint trial, let alone one involving 100 or more plaintiffs. (Orr Decl. Ex. M at 17:13–23.)

**IV. CONCLUSION**

Since less than 100 plaintiffs have proposed that their cases be tried jointly, the Court does not have jurisdiction under CAFA's mass action provision and all Lipitor cases presently before this Court must be remanded to state court. Accordingly, Plaintiffs' motion to remand is GRANTED.

DATED:     May 23, 2017

_____

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Pamela McKenzie et al v. Pfizer Inc et al | 2:14-cv-01800 CJC (JPRx) |
| Wanda Dearmore et al v. Pfizer Inc et al | 2:14-cv-01801 CJC ( JPRx) |
| Juana Garcia et al  v. Pfizer Inc et al | 2:14-cv-01804 CJC (JPRx) |
| Judy Miller et al v. Pfizer Inc et al | 2:14-cv-01805 CJC  (JPRx) |
| Bernadette Fernandez et al v. Pfizer Inc et al | 2:14-cv-01806 CJC (JPRx) |
| Segalilt Siegel et al v. Pfizer Inc et al | 2:14-cv-01807 CJC (JPRx) |
| Luretta Alexander-Jackson et al v. Pfizer Inc et al | 2:14-cv-01808 CJC (JPRx) |
| Willie Sims-Lewis et al v. Pfizer Inc et al | 2:14-cv-01809 CJC (JPRx) |
| Bonnie Kessner et al v. Pfizer Inc et al | 2:14-cv-01811 CJC (JPRx) |
| Jeri Kessler et al v. Pfizer Inc et al | 2:14-cv-01812 CJC ( JPRx) |
| Ravyne Dow et al v. Pfizer Inc et al | 2:14-cv-01813 CJC (JPRx) |
| Deberah Rivington et al v. Pfizer Inc et al | 2:14-cv-01814 CJC (JPRx) |
| Phyllis Beima et al v. Pfizer Inc et al | 2:14-cv-01815 CJC (JPRx) |
| Nina Obuch et al v. Pfizer Inc et al | 2:14-cv-01816 CJC (JPRx) |
| Adelle Calabretta et al v. Pfizer Inc et al | 2:14-cv-01817 CJC (JPRx) |
| Alida Adamyan et al v. Pfizer Inc et al | 2:14-cv-01818 CJC (JPRx) |
| Maria Carbajal et al v. Pfizer Inc et al | 2:14-cv-01819 CJC (JPRx) |
| Dorothy M Andres et al v. Pfizer Inc et al | 2:14-cv-01820 CJC (JPRx) |
| Donna Kruenegel et al v. Pfizer Inc et al | 2:14-cv-01822 CJC (JPRx) |
| Mattie King et al v. Pfizer Inc et al | 2:14-cv-01823 CJC ( JPRx) |
| Patricia Banks et al v. Pfizer Inc et al | 2:14-cv-01824 CJC (JPRx) |
| Rose A Williams et al v.  Pfizer Inc et al | 2:14-cv-01828 CJC (JPRx) |
| Vicky Avila et al v. Pfizer Inc et al | 2:14-cv-01829 CJC (JPRx) |
| Maizy Benons et al v. Pfizer Inc et al | 2:14-cv-01831 CJC (JPRx) |
| Linda Roy et al v. Pfizer Inc et al | 2:14-cv-01832 CJ C(JPRx) |
| Brenda Johnson et al v. Pfizer Inc et al | 2:14-cv-01836 CJC (JPRx) |
| Blanca Mejia et al v. Pfizer Inc et al | 2:14-cv-01837 CJC (JPRx) |
| Lori Ann Weisman et al v. Pfizer Inc | 2:14-cv-01841 CJC (JPRx) |

| | |
|---|---|
| et al | |
| Sylvia Alvardo v. Pfizer Inc et al | 2:14-cv-01843 CJC (JPRx) |
| Lena Whitaker et al v. Pfizer Inc et al | 2:14-cv-01844 CJC ( JPRx) |
| Martha Bowser v. Pfizer Inc et al | 2:14-cv-01846 CJC (JPRx) |
| Patricia Lewis et al v. Pfizer Inc et al | 2:14-cv-01848 CJC (JPRx) |
| Emma Fields et al v. Pfizer Inc et al | 2:14-cv-01850 CJC (JPRx) |
| Fiette Williams et al v. Pfizer Inc et al | 2:14-cv-01853 CJC (JPRx) |
| Pallavi Mehta et al v. Pfizer Inc et al | 2:14-cv-01854 CJ C(JPRx) |
| Theresa Medina et al v. Pfizer Inc et al | 2:14-cv-01857 CJC (JPRx) |
| Deborah McClain et al v. Pfizer Inc et al | 2:14-cv-01858 CJC (JPRx) |
| Valerie Davis v. Pfizer Inc et al | 2:14-cv-01860 CJC (JPRx) |
| Tonisha Powell et al v. Pfizer Inc et al | 2:14-cv-01861 CJC ( JPRx) |
| Zurita Gray et al v. Pfizer Inc et al | 2:14-cv-01862 CJC (JPRx) |
| Clara Bagdasarian et al v. Pfizer Inc et al | 2:14-cv-01863 CJC (JPRx) |
| Clara Owens v. Pfizer Inc et al | 2:14-cv-01865 CJC (JPRx) |
| Deloris Ann Richard et al v. Pfizer Inc et al | 2:14-cv-01866 CJC (JPRx) |
| Mazal Azzam et al v. Pfizer Inc et al | 2:14-cv-01867 CJC (JPRx) |
| Imelda Diaz et al v. Pfizer Inc et al | 2:14-cv-01869 CJC (JPRx) |
| Shahla Owhady et al v. Pfizer Inc et al | 2:14-cv-01872 CJC ( JPRx) |
| Ouida Valentine et al v. Pfizer Inc et al | 2:14-cv-01874 CJC (JPRx) |
| Loretta Curley et al v. Pfizer Inc et al | 2:14-cv-01876 CJC (JPRx) |
| Regina Feberdino et al v. Pfizer Inc et al | 2:14-cv-01889 CJC (JPRx) |
| Ruth English et al v. Pfizer Inc et al | 2:14-cv-01892 CJC (JPRx) |
| Cheri Lubenko v. Pfizer Inc et al | 2:14-cv-01894 CJC (JPRx) |
| Jessie Hill et al v. Pfizer Inc et al | 2:14-cv-01895 CJC (JPRx) |
| Doris Choate et al v. Pfizer Inc et al | 2:14-cv-01896 CJC (JPRx) |
| Susan Kelley et al v. Pfizer Inc et al | 2:14-cv-01897 CJC (JPRx) |
| Charlene Tate et al v. Pfizer Inc et al | 2:14-cv-01898 CJC (JPRx) |
| Mary Adamian et al v. Pfizer Inc et al | 2:14-cv-01899 CJC ( JPRx) |
| Candacy Roberts-Anderson et al v. Pfizer Inc et al | 2:14-cv-01904 CJC (JPRx) |
| Louise Harris et al v. Pfizer Inc et al | 2:14-cv-01906 CJC (JPRx) |
| Shirley Reynolds et al v. Pfizer Inc et al | 2:14-cv-01907 CJC (JPRx) |

| | |
|---|---|
| Juanita Banks et al v. Pfizer Inc et al | 2:14-cv-01908 CJC (JPRx) |
| Ruby Hare et al v. Pfizer Inc et al | 2:14-cv-01910 CJC (JPRx) |
| Marion Constant v. Pfizer Inc et al | 2:14-cv-01911 CJC (JPRx) |
| Janice S Robinson et al v. Pfizer Inc et al | 2:14-cv-01912 CJC ( JPRx) |
| Joy Zullo et al v. Pfizer Inc et al | 2:14-cv-01914 CJC (JPRx) |
| Donna Willis v. Pfizer Inc et al | 2:14-cv-01916 CJC (JPRx) |
| Frankie Brown et al v. Pfizer Inc et al | 2:14-cv-01921 CJC (JPRx) |
| Jocelyn Clemente Salvo et al v. Pfizer Inc et al | 2:14-cv-01924 CJC (JPRx) |
| Gladys Anderson et al v. Pfizer Inc et al | 2:14-cv-01925 CJC (JPRx) |
| Darlene Jordan et al v.  Pfizer Inc et al | 2:14-cv-01928 CJC (JPRx) |
| Deann Pierce v. Pfizer Inc et al | 2:14-cv-01929 CJC (JPRx) |
| Denelle Bailey et al v. Pfizer Inc et al | 2:14-cv-01930 CJC (JPRx) |
| Edith Wakabayashi v. Pfizer Inc et al | 2:14-cv-01931 CJC (JPRx) |
| Maye Alberstone et al v. Pfizer Inc et al | 2:14-cv-01932 CJC (JPRx) |
| Rose Hodges v. Pfizer Inc et al | 2:14-cv-01936 CJC (JPRx) |
| Marilyn Williams et al v. Pfizer Inc et al | 2:14-cv-01937 CJC (JPRx) |
| Linda Franzone et al v. Pfizer Inc et al | 2:14-cv-01940 CJC (JPRx) |
| Joyce Lubniewski v. Pfizer Inc et al | 2:14-cv-01942 CJC (JPRx) |
| Tomie Isrel et al v. Pfizer Inc et al | 2:14-cv-01943 CJC  (JPRx) |
| Elizabeth Ann Watts et al v. Pfizer Inc et al | 2:14-cv-01997 CJC (JPRx) |
| Jewel Williams et al v. Pfizer Inc et al | 2:14-cv-03477 CJC (JPRx) |
| Kim Collins et al v. Pfizer Inc et al | 2:14-cv-05792 CJC (JPRx) |
| Linda Watson et al v. Pfizer Inc et al | 2:14-cv-06226 CJC ( JPRx) |
| Helen Elliott et al v. Pfizer Inc et al | 2:14-cv-06617 CJC (JPRx) |
| Eliane Scott et al v. Pfizer Inc et al | 2:14-cv-07432 CJC (JPRx) |
| Michelle Bradley et al v. Pfizer Inc et al | 2:14-cv-07649 CJC (JPRx) |
| Granieta Johnson-Wilson et al v. Pfizer Inc et al | 2:14-cv-08261 CJC (JPRx) |
| Judy Kloss et al v. Pfizer Inc et al | 2:14-cv-09567 CJC ( JPRx) |
| Ann Sanchez et al v. Pfizer Inc et al | 2:15-cv-01211 CJC (JPRx) |
| Judith Smalley et al v. Pfizer Inc et al | 2:15-cv-01483 CJC (JPRx) |
| Julie Williams et al v. Pfizer Inc et al | 2:15-cv-01626 CJC (JPRx) |
| Robyn Whitney et al v. Pfizer Inc et | 2:15-cv-01638 CJC (JPRx) |

| | |
|---|---|
| al | |
| Gloria Wilson et al v. Pfizer Inc et al | 2:15-cv-03525 CJC (JPRx) |
| Amy Caro et al v. Pfizer Inc et al | 2:15-cv-03880 CJC (JPRx) |
| Shari Beneda et al v. Pfizer Inc et al | 2:15-cv-04267 CJC (JPRx) |
| Magda Santiago et al v. Pfizer Inc et al | 2:15-cv-04299 CJC (JPRx) |
| Shary Stegall et al v. Pfizer Inc et al | 2:15-cv-05013 CJC (JPRx) |
| Michelle Davis et al v. Pfizer Inc et al | 2:15-cv-05188 CJC (JPRx) |
| Pauline St Jean et al v. Pfizer Inc et al | 2:15-cv-06068 CJC (JPRx) |
| Anita Perlhefter et al v. Pfizer Inc et al | 2:15-cv-06555 CJC (JPRx) |
| Priscilla Garcia et al v. Pfizer Inc et al | 2:15-cv-07257 CJC (JPRx) |
| Ruth Yaker et al v. Pfizer Inc et al | 2:15-cv-7258 CJC (JPRx) |
| Nadine Smith et al v. Pfizer Inc et al | 2:15-cv-08138 CJC ( JPRx) |
| Gloria Ashley et al v. Pfizer Inc et al | 2:15-cv-08604 CJC (JPRx) |
| Betty Stevens et al v. Pfizer Inc et al | 2:15-cv-08845 CJC ( JPRx) |
| Mixdalia Taime et al v. Pfizer Inc et al | 2:15-cv-09495 CJC (JPRx) |
| Pari Jamshidi et al v. Pfizer Inc et al | 2:16-cv-00586 CJC (JPRx) |
| Jonna Roberts et al v. Pfizer Inc et al | 2:16-cv-01400 CJC (JPRx) |
| Emilya Yudson et al v. Pfizer Inc et al | 2:16-cv-01762 CJC (JPRx) |
| Aleene M Queen et al v. Pfizer Inc et al | 2:16-cv-01924 CJC  (JPRx) |
| Theresa Bagliere et al v. Pfizer Inc et al | 2:16-cv-02996 CJC (JPRx) |
| Teresa Brooks et al v. Pfizer Inc et al | 2:16-cv-03811 CJC (JPRx) |
| Genevieve Monreal et al v. Pfizer Inc et al | 2:16-cv-04007 CJC (JPRx) |
| Elizabeth DeBay et al v. Pfizer Inc et al | 2:16-cv-04015 CJC (JPRx) |
| Myrle Jackson et al v. Pfizer Inc et al | 2:16-cv-04678 CJC (JPRx) |
| Sharon Campbell et al v. Pfizer Inc et al | 2:16-cv-05156 CJC (JPRx) |
| Lawana Smith et al v. Pfizer Inc et al | 2:16-cv-05560 CJC (JPRx) |
| Mildred Lois Brown et al v. Pfizer Inc et al | 2:16-cv-06157 CJC (JPRx) |
| Barbara Gibson et al v. Pfizer Inc et al | 2:16-cv-06592 CJC (JPRx) |
| Rose A Carpenter et al v. Pfizer Inc | 2:16-cv-07084 CJC (JPRx) |

| | |
|---|---|
| et al | |
| Cynthia Faye Davis et al v. Pfizer Inc et al | 2:16-cv-07118 CJC (JPRx) |
| Sharal Scully et al v. Pfizer Inc et al | 2:16-cv-07478 CJC ( JPRx) |
| Patricia Williams et al v. Pfizer Inc et al | 2:16-c-v07762 CJC (JPRx) |
| Vicky Chaffee et al v. Pfizer Inc et al | 2:16-cv-07977 CJC (JPRx) |
| Tonya Baker et al v. Pfizer Inc et al | 2:16-cv-08542 CJ C(JPRx) |
| Vivia Artz et al v. Pfizer Inc et al | 2:16-cv-08694 CJC (JPRx) |
| Join Boles et al v. Pfizer Inc et al | 2:16-cv-08710 CJC ( JPRx) |
| Josefina Allison et al v.  Pfizer Inc et al | 2:16-cv-08721 CJC (JPRx) |
| Bessie Barringer et al v. Pfizer Inc et al | 2:16-cv-09091 CJC (JPRx) |
| Mary Baker et al v. Pfizer Inc et al | 2:16-cv-09532 CJC (JPRx) |
| Alma Richards v. Pfizer Inc et al | 5:14-cv-00485 CJC (JPRx) |
| Chasa Williams v. Pfizer Inc et al | 5:14-cv-00493 CJC (JPRx) |
| Sharon Parker et al v. Pfizer Inc et al | 5:14-cv-00496 CJC (JPRx) |